CALKINS *v.* CHESAPEAKE & OHIO RAILWAY COMPANY

HAY *v.* CHESAPEAKE & OHIO RAILWAY COMPANY

1. COUNTIES — ROAD COMMISSIONS — GOVERNMENTAL IMMUNITY — NOTICE OF CLAIM.

   A county road commission is governmentally immune from tort liability unless notice of claim is served upon it within 60 days of injury, as required by statute; therefore it was not error for the trial court to dismiss a railroad's third-party complaint against a road commission for negligence, where no notice was served upon the commission within the statutory period (MCLA § 224.21).

---

REFERENCE FOR POINTS IN HEADNOTES

[1–4] 41 Am Jur 2d, Indemnity § 42.

2. CONTRACTS — NEGLIGENCE — INDEMNIFICATION — COUNTIES — ROAD COMMISSIONS — RAILROADS — CROSSINGS — WARNING SIGNALS — FAILURE TO INSTALL — COMMON-LAW LIABILITY.

Indemnification clause in contract between plaintiff railroad and defendant county road commission obligating the road commission to compensate the railroad for all claims, however caused, arising from the road commission's performance of its work in extending a public highway over plaintiff's tracks, did not impose an all-encompassing liability upon defendant to indemnify plaintiff for negligence claims arising from plaintiff's failure to install an electrical flasher at the highway crossing where the claims were based upon plaintiff railroad's common-law liability to the traveling public and not upon defendant road commission's negligent performance of its work.

3. CONTRACTS — NEGLIGENCE — INDEMNIFICATION — COUNTIES — ROAD COMMISSIONS — RAILROADS — CROSSINGS — WARNING SIGNALS — FAILURE TO INSTALL.

Contractual obligations of defendant county road commission to pay the expense of plaintiff railroad's installation of all highway crossing devices specified by the Michigan Public Service Commission and to indemnify the railroad for all claims arising from the road commission's work performance in extending a public highway over plaintiff's tracks, did not impose any indemnification liability upon the road commission for negligence claims based upon the railroad's failure to install an electrical flasher at the crossing where the road commission did not undertake to install or cause to be installed whatever warning devices might be required by common or statutory law, nor did it agree to save the railroad harmless from loss resulting from its failure to install those devices.

4. CONTRACTS — NEGLIGENCE — INDEMNIFICATION — COUNTIES — ROAD COMMISSIONS — RAILROADS — CROSSINGS — WARNING SIGNALS — FAILURE TO INSTALL.

Contractual obligations of defendant county road commission to indemnify plaintiff railroad for all claims arising from defendant's work in extending a public highway over plaintiff's tracks, and to pay for the installation costs of whatever protective warning devices the Michigan Public Service Commission specified had to be installed at that crossing, did not impose any duty upon defendant road commission to obtain public service commission authorization for the installation of whatever crossing devices common or statutory law required where the contract not only left it to the public service com-

mission to specify the type of highway crossing devices to be installed but also did not obligate defendant road commission to save the railroad harmless if the devices specified did not conform to the railroad's common-law duty to the traveling public.

Appeal from Grand Traverse, Charles L. Brown, J. Submitted Division 3 March 3, 1970, at Grand Rapids. (Docket Nos. 7,271, 7,272.) Decided April 29, 1970.

Complaints by Elmer Calkins and Frank G. Snyder for wrongful death and by Bob F. Hay for negligence, against the Chesapeake & Ohio Railway Company. Third-party complaints by Chesapeake & Ohio Railway Company against Board of County Road Commissioners of Grand Traverse County, a Michigan body corporate, for indemnification. Accelerated and summary judgments for third-party defendant. Third-party plaintiff appeals. Affirmed.

*Murchie, Calcutt & Brown,* for third-party plaintiff on appeal.

*Menmuir & Zimmerman,* for third-party defendant.

Before: R. B. BURNS, P. J., and FITZGERALD and LEVIN, JJ.

LEVIN, J. Number 7271 is a wrongful death action arising out of a collision on July 4, 1964 between a railroad train operated by the defendant, Chesapeake & Ohio Railway Company, and an automobile being driven by the plaintiffs' decedent, Elmer Floyd Calkins.

Number 7272 arises out of another accident and is an action by the injured person against the C & O to recover for the injuries he suffered in a collision on August 21, 1964 between an automobile he was driving and one of defendant's trains.

Both collisions occurred at the same place, the intersection of South Airport Road and the C & O railroad tracks near the city limits of Traverse City, Michigan.

The trial judge granted the railroad leave to file third-party complaints against the board of county road commissioners of Grand Traverse county. The third-party complaints allege that if the railroad is adjudged negligent for any failure to have provided the type of crossing protection required by law, then the road commission is liable over to the railroad because the failure is attributable to (1) negligence of the road commission and (2) the road commission's breach of a contract with the railroad wherein the road commission agreed to obtain permission for and provide the type of crossing protection required by law and to indemnify and save harmless the railroad from loss and damage.

The road commission moved for accelerated and summary judgments which were granted. The railroad appeals. We affirm.

In *Morgan* v. *McDermott* (1969), 382 Mich 333, the Michigan Supreme Court held that unless notice of claim is served on a county road commission within 60 days after injury pursuant to MCLA § 224.21 (Stat Ann 1958 Rev § 9.121), a third-party action may not be maintained against the road commission even though the action against the third-party plaintiff was not commenced until after the expiration of the 60-day period. In *Morgan* (p 352), the Court also ruled that the tort liability of a county road commission arises, if at all, under the cited statutory

provision, and that a road commission is otherwise governmentally immune from tort liability.

In this case, no notice was served on the road commission within 60 days after the accidents. Accordingly, the trial court properly dismissed the railroad's claim that the accidents were caused by the road commission's negligence.

The contract between the road commission and the railroad, dated June 7, 1962, grants the road commission an easement to extend South Airport Road across the tracks of the railroad. The contract recites that the road commission "will apply for and is to obtain" an order from the Michigan public service commission authorizing the opening of South Airport Road at grade "and specifying the type of highway crossing protection devices to be installed, operated and maintained at such crossing." The road commission also agreed to secure from the public service commission such "authorization, permission and approval as may be required for the grade crossing."

The contract further provides that at the cost and expense of the road commission the railroad will "furnish, construct and install all highway protection devices which shall be required by order of the Michigan public service commission upon the opening of South Airport Road or which shall be required by the Michigan public service commission or by any other duly constituted public authority after the opening of South Airport Road. Said furnishing, constructing and installing shall in all respects comply with the statutes of the State of Michigan and the standards and regulations of the Michigan public service commission covering such highway crossing protection devices."

The road commission further agreed to indemnify and save harmless the railroad "from all loss of and

damage to property, and injury to and death of persons * * * caused by, arising out of, or resulting in any manner from, the work to be performed by [the road commission] * * * under the provisions of this agreement, however caused."

On July 12, 1962, the public service commission entered an order permitting the crossing at grade in accordance with the provisions of the applicable statute,[1] and stating that the "commission is advised that all parties in interest agreed that the crossing is necessary; that a clear vision area will be provided with reasonably clear approaches; also, that reflectorized crossbuck and advance warning signs will be sufficient protection at this crossing."

The principle plaintiffs' claim that an electrical flasher[2] should have been installed is not predicated on the public service commission's order or any statute or any standard, regulation or requirement of the public service commission or of any other duly constituted public authority, but rather is based on an asserted common law liability of the railroad to the traveling public.[3]

The road commission did not, however, undertake to install or to cause to be installed whatever warn-

---

[1] Stated in the order to be PA 1931, No 336, §§ 1, 2, 3, 5 and 6 (MCLA §§ 469.1, 469.2, 469.3, 469.5 and 469.6 [Stat Ann §§ 22.761, 22.762, 22.763, 22.766 and 1970 Cum Supp § 22.765]).

[2] In response to an interrogatory from the railroad the plaintiffs stated that the "type of warning devices defendant should have maintained includes, among others, the type of automatic flasher (including the extra height extension) and bells installed by defendant at this crossing after this accident, but could also include automatic gates or an underpass."

[3] The complaints in both Nos. 7271 and 7272 allege that the railroad owed the principal plaintiffs a "common-law duty to use ordinary care and prudence * * *; to give motorists adequate, timely warning of the approach of its trains; * * * to maintain warning devices in addition to those maintained at the crossing"; and that the railroad "failed to perform its common-law duty to plaintiff as follows: * * * Under the physical circumstances existing at the crossing, the defendant failed to maintain satisfactory warning devices in addition to those maintained."

ing devices might be required by law, common or statutory, or to save the railroad harmless from loss resulting from any failure to do so. The contract requires only the installation of such devices as may be required by order of the public service commission or other duly constituted public authority and that those devices that are so required will be installed in accordance with the statutes of this State and the standards and regulations of the public service commission. No other warning device is required to be installed under the contract. The indemnity and save-harmless language in the contract protects the railroad only from loss, damage or injury "caused by, arising out of, or resulting in any manner from, the work to be performed by board [road commission] under the provisions of this agreement, however caused."

The railroad argues that no warning device may be installed without the approval of the public service commission and that the road commission[4] had a duty to obtain permission for the installation of whatever crossing protection "the law requires."

The contract left it to the public service commission to specif[y] the type of highway crossing devices to be installed, operated and maintained" at the crossing. Under the contract the road commission was obligated to pay for the cost of installing whatever warning device the public service commission "specified" and required to be installed.[5]

If the railroad wished to extract from the road commission as a condition of the easement grant an agreement to seek the public service commission's

---

[4] See MCLA § 257.615 (Stat Ann 1958 Rev § 9.2315); *People v. Grand T. W. R. Co.* (1966), 3 Mich App 242.

[5] The contract, by its terms, became effective and binding upon issuance of the commission's order authorizing and approving the grade crossing and specifying the type of highway crossing protection devices to be installed, operated and maintained.

permission to install at this crossing a particular warning device (as opposed to leaving it to the public service commission to specify the type of protection to be provided without any guidance as to the wishes of the parties) or an agreement to save the railroad harmless if the device specified by the commission did not conform to the common-law duty of the railroad to the traveling public, then the contract should have so provided. In the face of the language of the contract, we would not be justified in implying such terms in this case.[6]

Affidavits filed in support of the road commission's motions for accelerated and summary judgments state that the advance warning and reflectorized crossbuck signs were duly installed in accordance with the public service commission's order. The affidavit in No. 7271 also avers that between the date of that order and the date of the accident no request was made by the railroad or by the public service commission to change or add additional warning signs or warning devices at the crossing. No answering affidavit was filed, and we are advised that the statements in the affidavit are not disputed.

Affirmed. Costs to third-party defendants.

All concurred.

---

[6] Compare *Masters* v. *Grand T. W. R. Co.* (1968), 13 Mich App 80, with *People* v. *Grand T. W. R. Co., supra*.